Case number 10-2620, People v. Josiah Saunders, also known as Daniel Wu. Good morning. Emily Hartman, Office of the State Appellate Defender for the Appellant. Ms. Hartman, good morning. Good morning. Whitney Bond, representing the People of the State of Illinois. Good morning, Ms. Bond. All right. Ms. Hartman, you may proceed. Thank you, Your Honor. I'd like to reserve two minutes for rebuttal. Again, Emily Hartman, representing the Appellant, Josiah Saunders. This is one of those rare cases where a video of the events at issue actually exists, and that video shows that my client committed no crime. In this case, the State failed to prove Josiah Saunders guilty of battery beyond a reasonable doubt. The insulting or provoking prong of the battery statute requires that a defendant make physical contact with the complainant. The trial court's findings of fact here show that it was actually the complainant, undercover officer Allen, who made physical contact with Saunders. As those findings of fact are supported by the video of the incident that was introduced at trial, this Court should defer to those findings and reverse Saunders' conviction. Go ahead. You indicated that it's an essential element that there be physical contact. As I recall, or correct me if I'm wrong, didn't the trial court conclude that there was physical contact from the defendant to the arresting officer? No, the trial court concluded that- No, his finding was that the defendant had his arms down when the officer extended his arm into the defendant's chest. Then explain- how did the trial judge explain finding the defendant guilty? The trial judge made a mistake in convicting Saunders for the act of approaching on Allen. Approaching without contact is not sufficient to support the defendant's conviction. So let me get this straight. You're saying that even the trial judge said there was no physical contact between- or coming from the defendant to the officer? Yes, that is our position. The findings of fact are quite clear on that issue and supported by the video. Did he say- what was the word you just used about the approached? Is that what you said? Yes, yes. But didn't he say something- I thought he used a different verb. Yes, he used the word advanced. Advanced, okay. So his findings of fact were to prevent my client Saunders from advancing any further. Any further. Did he say any further? I don't have the findings of fact memories, but I can- Yeah, no, no, I'm just asking. Does advance mean that- could that mean that the judge concluded there was contact, that there was an advance? Could that mean physical contact? Do you think that means solely, you know, no contact? I don't think advance by itself can mean physical contact, and I think when you take into account the fact that the trial court said he had his arms down at his sides, and that Alan was the one that extended his arm into Saunders' chest, that it's clear that there was no contact on the part of- All right, well, let me clear that up, Ms. Hartman, because I don't recall exactly his findings of fact, but I thought you just told us that the judge said that as a finding of fact, he observed the defendant never making contact with the officer. It's implicit. Okay, so it's implicit. Okay, but he does make a finding of fact that the defendant's hands were down to his side before the officer extended his hand to stop the defendant from advancing, as he described it. That's correct, Your Honor. There is an express finding of fact that his arms were down at his side. All right, but was that a finding that encompassed the whole incident, or was that when the officer pushed out his arm to stop the advance? Well, the entire incident takes about four seconds, as is evident from the video, and as he walks around the corner, his arms are down at his sides the entire time, and when the officer rolls around, he does so very quickly and extends his arm to his chest. So Saunders never had a chance to get his arms up until the officer whirled around, and then he does put his arm in front of his face and leaned back. Who puts his arm in front of his face? The defendant leans back in a defensive posture, and that's from the video. That's not from the findings. Well, can you tell from the video what his left arm is doing? It's down at his side. Pardon me? The left arm from the video is clear that it's down at his side. Okay. I mean, we've all viewed the video. Okay. It's not really the picture of clarity, shall we say. And, in fact, let me segue from Justice McBride's question regarding what you can tell from the video.  Do we decide whether or not the video is ambiguous in terms of what actually happened? And if it is, doesn't that benefit the state? Or are you saying that the video is unambiguous, that it only shows one conclusion, only one conclusion that reasonably could be reached by a reasonable trier of fact, and that is that the contact came from the officer to the defendant, not from the defendant to the officer? Well, our position today is that the trial court's findings of fact are what this court should defer to, and those findings of fact, after viewing the video, showed that it was the officer that made contact with Saunders. Let me stop you right there, then. If we went on the findings of fact alone without the video, would it be sufficient that the trier of fact, the trial judge in this case, said that when contact happened between the defendant and the officer, the defendant's hands were down to his side? Wouldn't that be enough to support a finding of not guilty? That would be enough, especially combined with the fact that there is an express finding that it was the officer that pushed Saunders back. So you're saying that in order to find battery, there must be contact emanating from the defendant to the officer? The insulting or provoking prong of the statute requires physical contact. And, of course, the officer testified that there was such contact, and you're saying that the trial judge implicitly rejected his testimony, and the officer testified that he was grabbed by the shoulder, turned around, and that's when he extended his arm? That's correct. The findings of fact are inconsistent with Alan's testimony, and they credited the video over Alan's testimony. I don't want to ask you to argue against yourself, but just to pick up on Justice Garcia's question earlier, and I agree with your recitation of what the findings of fact were. The question in my mind is, accepting the finding of fact that the officer put out his arm to stop the advance of your client and pushed his arm into your client's chest, how did we get here? What was it that caused the trial court to enter a finding of guilty? Where's that contact on the part of the defendant? I believe that the trial court mistakenly applied the law of battery and believed that it was acceptable to base the conviction on the act of approaching itself. The battery statute, the plain language, requires that the defendant have made physical contact. I know you have suggested that the original Rule 23 that referred to the judge's statements at the directed finding were improper. However, at the motion for the directed finding, the court specifically found there was contact. He said that. So how do we go from there to later saying that what he said there was not accurate, regardless of what point it is? There was no finding of guilt at that point, but the defense had moved for a directed finding. And the trial judge denied the directed finding at that point because he found there was contact. He said it. So at the directed finding, the trial court's statement, because the trial court would not have made up his mind about the facts. And that's not what we're getting at here. I'm not suggesting he made up his mind at all. And the original Rule 23 doesn't say that he made up his mind and that somehow he had. And you're not suggesting that the trial court didn't appropriately make a determination at the end. You're saying his factual findings are against the evidence. But he had concluded in denying that directed finding that there was contact. What is it that he says in his finding at the end of all the evidence that changes that? Well, the comment at the motion for directed finding was made before my client testified. And so it was made before he had that additional evidence to consider and weigh. At the end of the evidence, he did say that it was Allen that reached out and made contact with Saunders, which completely contradicts his earlier comment. Because those were made at the close of the evidence after my client testified, those are the findings of fact that this court should defer to. Well, didn't he say that the officer put his arm out only after the defendant advanced on him? He walked, yes, but advancing. See, I don't know what that means. I'm not sure it means, I'm not sure what it means. The judges used the word. But I don't know that advance can't mean that there was physical contact. In fact, let me give a slightly different twist to it, and that is that an officer engaged in the course of his lawful duty, which is to arrest an individual, individual comes up close to him. The officer can, in fact, raise his hand. And if the individual approaching the officer continues to advance towards him, in a sense, he has made contact, this defendant, I mean this individual, Saunders, with the officer because the officer simply extended his hand, and the Saunders walked into his hand, and thereby making contact. I don't think that that's what's happened here, Your Honor. The findings of fact were that that, and the video does show that when Allen whirled around very quickly and his arm pushed Saunders back, and the findings of fact were that Allen pushed Saunders back into the path of the police car. But you can't get to the point of pushing until there's contact, and the question is how did that contact happen? Did it happen because Saunders advanced, or did it happen because the officer reached out and pushed Saunders back? The trial court's findings of fact. Is there a fact that we should defer to the trial court's conclusion on that? The trial court's conclusion on that was that Allen reached his arm out in order to stop Saunders from advancing. So that because Allen reached his arm out, we don't know if Saunders would have gone any further. We don't know. His arms were down at his side. He was not in an aggressive posture. And the findings of fact show that it was Allen that took the initiative to push him back. Saunders might have stopped there. And so there's nothing in the findings of fact that would preclude, if you defer to those findings of fact, preclude. So once again, what do we do with the video? We look at the video in light of the findings of fact and determine whether reasonable doubt remains, and if so, we have to reverse. Yes. But if the video is ambiguous, then in light of the findings of fact, we have to affirm. I disagree, Your Honor. Doesn't it turn on the ambiguity of the videotape? If it can only be seen one way, it's unambiguous. But if it can be seen differently by different people, then it's ambiguous. The trial court's findings of fact here, you can reverse the conviction based solely on the trial court's findings of fact without the video. The findings of fact were clear that it was Allen that made contact with Saunders. Would we have to declare a rule of law that says that battery cannot occur if the first contact is made by the purported victim of the battery? That is already the law under the plain language of the statute. Excuse me. If that's the law, then... There's no need to declare a new rule of law. The plain language of the statute under the insulting or provoking prong is clear. But you do not have to affirm even if you find that contact occurred here by Saunders because any contact that occurred here was not insulting or provoking contact as a matter of law. Well, let me go back just briefly to the other question. Now, from reviewing the record, it's clear that this tape was played. True? Yes. And from reviewing the record, it's also clear that the officer described what the video portrayed. Yes. The state's attorney was present, the defense attorney was present, the defendant was present, and the judge was present, and they're all looking at this video. Yes. So are we supposed to retry the case now, or do we have to give some deference to the fact that this videotape that you're arguing shows whatever? Are we supposed to now try this case, look at the video, and retry the defendant? Isn't that what you're asking us to do? No. This is a... Because the judge looked at it, the state looked at it, the officer testified about the video, the defense attorney cross-examined about the video, the defendant testified. I mean, aren't we going to retry this if we make findings of fact? No, this Court does not need to make any findings of fact. Let me ask you this question. Related to that, is the video much like scientific evidence? What if it were DNA? What if DNA says that the defendant did not have contact with the victim? Why shouldn't we treat the video like the scientific evidence? We're not retrying it. We're not giving a different view of what is on the video, but simply accepting the video for what it depicts. I'm sorry, I don't understand the question. Why shouldn't we treat the video as if it's testimony, as opposed to scientific evidence, that is simply subject to only one reasonable view? And in that sense, we're not making findings of fact. We're not taking into account the conflicting testimony and trying to resolve conflicts. We're saying that the video itself is like scientific evidence. It only leads to one conclusion, and that conclusion is? The video is clear, and like scientific evidence. The part of the video that is most important is that Saunders' arms were down at his side. At the time that the officer puts his arm out? Saunders did not make contact with the officer. That's clear from the fact that his arms are not reaching. Just prior to that, is it very clear that the defendant is right there in the mix? Isn't his physical person right there? It's clear that he approached, but the video shows that his arms were down at his side the entire time. He never reached out. Didn't you just concede earlier that you can't see what his left hand is doing at some point? No, I said it was down. It's clear that the left hand is down at his side. I mean, his back is to the camera, the defendant. Yes, his back is to the camera. I'm not sure you can see what his left arm is doing at all times. I'm not sure you can see whether he has something in his hand or not. It looks like he may have something in his left hand, but it's really not clear. I mean, the video is not really. Are we speaking, is it the right hand where there's maybe like a soda in it? No, I think in the left hand there's something. That's why I'm saying it's really not clear because there's certain things you can see. You can see figures. You can see that there's a jacket and that the defendant apparently is wearing a jacket that has a number or some kind of something on the back, but it's really not clear what it is. And that raises the other question in terms of whether the officer said that Sanders touched him with his right hand or touched him with his left hand. And even if the testimony isn't clear, which way did Sanders turn? Was he touched on his right shoulder, which would suggest that it was his right hand, that Sanders' right hand that touched the officer's right shoulder? Or was it that he turned in the direction of his left shoulder, which would suggest that it was Sanders' left hand that touched the officer's left shoulder? Do you know, do you recall which way he turned? No, I don't recall. And whether or not there was any finding of fact in terms of – because the officer testifies that Sanders touches him on the shoulder and basically turns him around. And depending on which way he turned would tell us which hand he used to likely do that. Well, the officer's testimony was that Sanders reached out and grabbed him by the shoulder and yanked him back. And I think at the very least the video – Causing him to turn around. Causing him to turn around. And at the very least the video and the findings of fact are clear that that is not what happened. This was over a year after the incident. Perhaps the officer didn't remember correctly. What do you think the implications of that are? That you have a situation where the complaining witness's testimony apparently has been disregarded by the judge and yet still the judge found a battery? Because it seems to me that you're right that the officer said, I was grabbed from the rear of my shoulder and dragged off the narcotic suspect. And in the findings of fact – well, which doesn't seem to be supported by the video. But in the findings of fact, it appears to me that the judge disregarded that testimony and said that the contact was not the grabbing of the shoulder and the dragging off of the suspect, but it was the contact between your client's chest and the officer's arm. So what are the implications of the fact that the judge apparently is making a decision based on the video and disregarding the complaining witness's testimony? The trier of fact, this is certainly perfectly permissible for the judge to do. I mean, a police officer's testimony is to be regarded the same as any other witness. Based on the video, the video does contradict Allen's testimony and the video is unbiased. I think Justice Palmer's question may have been directed a little differently. And that is, what if the implication is that it's a compromise verdict? And what if the implication – and why shouldn't a compromise verdict be upheld if it's the trier of fact's determination that the events were ambiguous? And certainly if this were a jury trial and the jury came back with a guilty of misdemeanor, it would be hard to review it the way we're reviewing it now. There would be no findings of fact. There would be no explanation for the verdict. Well, one of the benefits of the bench trial is that there often are extensive findings of fact which can reveal what the judge was thinking. Well, what about what Justice Palmer asked you? A compromise verdict. About the contact. Excuse me. The contact. Justice Palmer is suggesting that when the trial judge made his findings of fact, he concluded that the officer had a right to have his – put his arm out to stop the advancement of the defendant, and that was the contact. Yes. The officer had a right to do that, and we never suggested that the officer didn't do the right thing in this situation, but undercover police officers, they blend into the community, and not every encounter between an undercover officer and an ordinary citizen needs to result in somebody being convicted of a crime. The trial judge mistakenly convicted Saunders of battery based on Allen pushing him back. Allen had to push him back. It seems to me that the – I'm sorry. Let me just segue into Justice Palmer's implications question. Do you see any implication from the original charges being filed against Mr. Saunders and those original charges being found, the evidence on supporting them, and the officer and the trier of fact simply going with a misdemeanor? Are there implications from that? In light of the trier of fact's apparent rejection of the version offered by the officer, because the officer, I think, testified consistent with a felony charge, and yet he was found not guilty of the felony charge. He was found not guilty of the felony charge because there was no – nothing in the video, and he found that there was no way Saunders could have known that he was a police officer. I don't want to speculate as to what the implications of the trial court acquitting him of every felony and then committing him of misdemeanor. It may be a compromised verdict. It don't think that – Well, does the doctrine of lenity apply to the bench trial finding? It does, doesn't it? The doctrine of lenity? Yes. Yes, of course. But a compromised verdict should not be upheld where there still needs to be evidence beyond a reasonable doubt. There's not a reasonable doubt of all the charges filed against Saunders. The court cannot just convict him based on a mistaken rule of law of battery just to sort of split the baby. That is not permissible. Well, that's the problem with compromised verdicts. Sometimes judges in the felony courts, they try to find a way to compromise things, and then what you wind up with is not supported by the evidence. If it's not supported by the evidence, it's not supported by the evidence, right? Right, exactly. The question I wanted to ask is, it seems to me that in order for there to be a battery, based on the findings of the trial court here, that the contact in question has to be the contact between the officer's extended arm and your client's chest. Right. Now, under the standard of review – by the way, what would you say are the standard of reviews? Well, the standard of review, first, of course, give deference to the findings of fact. And I understand that the standard of review is in the light most favorable to the state. Could any rational trier of fact have found a client guilty beyond a reasonable doubt? Okay, so could any rational trier of fact, since we're centering on that contact, could any rational trier of fact have found, I guess, that the defendant's chest advanced and made contact with the officer's hand before the officer's hand made contact with the defendant's chest? I mean, isn't that really what we're down to? Let me interrupt. Sorry to break up your train of thought, but it isn't quite that standard of review in this. No, I didn't. It's a standard of review in light of the findings of fact. In light of the – that was my next sentence. In light of the – no, it's okay. In light of – this Court should still give deference to the findings of fact. In light of the findings of fact, can any rational trier of fact conclude that the defendant was guilty? And your argument is no. No rational trier of fact that was correctly applying law of battery, no. This Court should still – I mean, within those findings of fact, taking those findings of fact can review de novo whether or not the trial court correctly applied the law of battery. That's a legal question. So it is sort of a split standard of review. So back to my question. Back to your question. And it's really the bottom line question for you, I think, and that is could a reasonable trier of fact find that in this, quote, advance that Justice McBride was talking about, that, you know, an officer could put up a stand and say halt, and someone could walk into him, and that would be a battery. Well, it would be arguably a contact that could lead to a conclusion that it's a battery. So could a rational trier of fact conclude, based on the findings of the judge and the video, because we're putting the officer's testimony about the dragging aside, could a rational trier of fact conclude that that's what happened, that the defendant walked into the officer when the officer tried to tell him the background? Because, well, could they? No, because the trier of facts, findings of fact here, expressly state that Alan extended his arm in order to stop Saunders' advance. The findings of fact were not that Saunders walked into Alan's arm, but that Alan's arm was the one that went forward into Saunders and pushed him back. And on another note, to be more precise, are we really looking at the trial judge's actual findings of fact, or on a sufficiency of the evidence, are we looking at a reasonable trier of fact, so that we don't really focus on the words in every statement that he gave when he found him guilty? No, we should give deference to the trier of facts' actual findings of fact here. But that's not the standard of review for an appellate court. We look at whether any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. We don't look at what he concluded. Well, we look at his findings of fact, but not his conclusions of law. So we give deference to the findings of fact, but when we ultimately decide whether or not the statement is burden of proof, we're looking at whether any reasonable trier of fact, any rational trier of fact, could have found the elements of the offense beyond a reasonable doubt. Correct. And in this case, anyone that was properly applying the law of battery would not have been able to find Saunders guilty. I'd like to briefly touch on insulting or provoking. This Court has no more questions on the first issue. The contact here. I do want to just go back briefly. The tape doesn't have any audio. No, it does not. So we don't know what they said from the tape, but then we have two different versions of what was said from the officer and from the defendant. Right. And at some point, the defendant does admit that he said something, right? He's the first person to say anything. Yes. Okay. And the officer basically says he's responding to someone behind him, right? Okay. All right. Okay. So you have a little bit of a credibility issue with your client testifying that he didn't know what CPD meant. I don't necessarily think that's true because what he said was, he didn't necessarily say, I don't know what it meant. He said it didn't click right away. And this is in a matter of seconds. Someone's yelling at you in a tense situation, CPD, it might take a couple of seconds for you to realize what it meant. So I think that it didn't click. It's like the focus on a deadly weapon, for example. Your focus is on the deadly weapon, not on the words that are being issued at the time. And he's focused on whatever the tussle that's going on in front of him. Right. And it's a heated situation that's a second. So he just said it didn't click right away. But then after he realized it later, he realized it was the CPD. And that's in the trial court. And that's when he started running. Yes. I thought he ran after the car. He got hit by a car. That's when he realized when the car hit him. And then he ran after that. But the trial court's findings of fact were that in this neighborhood, that is what people do. They run from the police. He did say that. He did say that. An insulting or provoking case can involve facts that are inherently insulting or provoking, facts that are on its face, just so shocking, outrageous, or repulsive that no additional factual context is needed. And the alternative insulting or provoking cases can involve contact that is innocent on its face, but that becomes insulting or provoking when the factual context of the situation occurs. Part of that factual context is often the testimony of the complainant that he or she felt scared, trapped, insulted, or provoked. Well, now, I want to talk about provoked. We've got a police officer, two police officers. They're trying to disarm a person. Is there any question about that? No. All right. So do you think that under the cases, we should say that when police officers are trying to disarm someone with a gun, that if someone comes up from behind them and tries to interfere with what they're doing, that that isn't provoking the police officer? I think that the issue presented here is Under a reasonable doubt, manifest weight, as we look at this now, can you say that an officer wouldn't consider that provoking when someone, when they're trying to disarm a person with a gun and someone comes up behind them and says whatever he says and also advances on them, that that's not provoking? I think that that's not the situation here because the trier of fact found that Saunders did not know that Allen was a police officer. Both men were undercover. No, and that's not the question. The question isn't whether he knew that. The question is, is the insulting and provoking related to the defendant or is it related to the person that's being battered? I think a reasonable person in the complainant's position, and I think in this case a reasonable non-police officer because he is undercover and there is no way Saunders could have known that he was a police officer. He's wearing a hoodie, dark clothing. It looks like a fight. And I think that the standard here is would a reasonable non-police officer be engaged in a fight? This isn't really a non-police officer, even though we're not debating here about whether he had knowledge that this, I mean he said he didn't, but that's not the issue. It's not whether there was knowledge that this person was a police officer. The difficulty I see in the question being asked is that it basically separates the battery charge into two different classes, one regular citizen's battery and one police officer's battery. With the police officer's battery, you have to take into account the officer's actions and therefore the burden is almost higher to avoid a conviction than it is with a regular non-officer complainant. But to treat the situation here as if, I mean to take Alan's police officer status into account here would potentially punish a lot of innocent contact because undercover officers blend into communities. This situation looked like a fight. I can imagine any other kind of situation involving an undercover officer doing something, maybe looks like he's beating up on somebody, anything like that. And if you say that just the fact that he's an officer and interfering with his duties is provoking, then you risk punishing innocent people who just think that they see ordinary citizens fighting. And in fact, that's the reason for the announcement. CPD, an officer announces that he's an officer to make sure that the individual approaching him doesn't confuse him for an ordinary citizen. That's true. But in this case, like I said, it did happen in seconds and it did take a few seconds for it to click. I'm just saying from the perspective of the officer, he does it for that reason, to give notice to the individual approaching to understand what's really going on as opposed to misconstruing or think it's just an ordinary fight. And in theory, that should happen every time and the person hears it and steps back. But in practice, things happen very quickly. And in this situation, the CPD business just didn't register quickly enough. This situation, any contact that did occur here is not somebody jumping in and throwing punches. It's minimal contact designed to stop a fight. With taking into account that he did not know it was a police officer, this is not insulting or provoking because this kind of contact is meant to pull the situation down, ask the fighters to stop, take a step back, think about what they're doing. Contact meant to pull down is, in fact, the opposite of provoking contact. And is that some sort of argument that, in fact, the courts should encourage that sort of activity as opposed to discourage it? I don't necessarily think the courts should encourage or discourage the activity, but I don't think that the courts should punish that activity as a criminal offense. Certainly, this neighbor, he put himself at risk by trying to set up a fight, and I don't think that we should necessarily encourage that, but he certainly didn't commit a crime. This court has no more questions. I'll reserve the rest of my time for rebuttal. Ms. Vaughn? Good morning, Your Honors. Again, my name is Whitney Vaughn, representing the people of the state of Illinois. This court was cognizant of the proper standard of review and ruled as it was supposed to in arriving at the correct decision to affirm defendant's conviction. The standard of review in a reasonable doubt case is well settled. The question is whether, in the light most favorable to the prosecution, could any rational trier of fact find the essential elements here of battery? Is this court as well aware of the responsibility of the trial court, now Justice Salone, to determine the credibility of Officer Allen and the defendant, and to watch the videotape, and to determine So, what do we do with Justice Salone's findings of fact? Do we just set them aside and not address them? Of course not. I believe this is a case where you need to take the totality of all the circumstances of what's happening here. We have the trial court's findings of fact. You also have a videotape, as Justice McBride pointed out, is ambiguous to some very specific details of what Well, have you looked at it lately? I have not looked at it lately. Did you ever look at it? Of course, yes. When I filed this brief, I looked at it several times, because I do, what the findings of fact show, and what these, your honors have clearly seen, is that this defendant does have his hands down, and that is contrary to what Officer Allen testifies to. He says he was grabbed in the upper right shoulder. Well, it seems to me that the state is kind of caught between a rock and a hard place here, because we have to say to you, well, what is the contact you're complaining of? Because if you read the officer's testimony, the officer's testimony is that he was grabbed by the rear of his shoulder and dragged off of the narcotic suspect. The trial judge makes findings that seemingly disregard the officer's testimony, and he says that the contact is between the extended arm and the chest. And so, you know, it seems to me you have to make a choice, and neither one of them is very good, and that is, well, you know, was the officer right and is the judge wrong, or is the officer wrong and is the judge right? And if we are even asking those questions, is there a reasonable doubt as to what actually happened here? I mean, it's clear at least that the officer's rendition of what happened here is simply not borne out, and it's disregarded by the trial judge. So what's the state's position? Where's the contact? I understand what you're saying. I think what we need to do is look at the videotape as an adjunct to the officer's testimony. What the officer does is he testifies, yes, I was grabbed by the shoulder. If you want to use the videotape as an adjunct to the officer's testimony, you kind of wonder if you're looking at the wrong videotape or if you're looking at the wrong DVD. Because it's very clear, it's very clear that it looks like the left arm of the defendant is in some type of a, it's down at his side and it might be crooked at the elbow, maybe carrying something. The right arm is down. And it's very clear that the defendant does not pull the officer off of the suspect. That simply does not happen. The officer does spin around to his right and then his arm is extended. And so how can you say that the DVD is an adjunct to the officer's testimony? It's just not there. The reason that I said that is because the defendant approaches, we see the back of him as Justice McBride pointed out. Officer Allen is standing also kind of on an angle with his back more towards the camera. And this is a pod camera whose sole purpose is not to directly film with every possible angle of this incident. We're lucky that we have it. What happens is you cannot see. I think the defendant might agree with you. We're lucky we have it. That's why we're here. What you can't see is the defendant's hands. What you can't see is exactly what contact was made with the crook of the elbow. What you can see, however, is how quickly Officer Allen turns around to address the situation that is happening behind him. So that goes back to my original question. What is the contact? Yeah, I'm going that way. No, that's where I was going. But also, when you say he turned around very quickly, that suggests that his quickness in turning around was not, and in fact, as Justice Palmers pointed out, the quickness in turning around was not triggered by physical contact. It was triggered by words. And if it's triggered by words, then, or by someone approaching, maybe by viewing him at the corner of his eye, that sort of thing, and being concerned, he turns around and extends his arm. And going back to Justice Palmer's question, what is the contact that constitutes the battery? And his related question, maybe a more basic question, can battery happen by virtue of an arm extended and then walking into it? Absolutely. But that's the contact? I mean, in the context of this case, yes. I apologize for not getting to this point sooner. What happened was this officer turned around quickly. Now, be it because we can't see that the hands touched him. There was also a statement that was made. Well, you keep talking about his hands, but I want to know what the state, I want to know what the state contends the conduct, I'm sorry, I want to know what the state contends the contact is that broke the law. It's the advancement upon the officer. The officer has forced a turn and removed his attention from the struggle that's going on in front of him. And he has to put his hand up to stop an advancement. Now, certainly, putting his hand up and a defendant walking into it and a defendant continuing to advance, which is, I believe, another word and verb that Justice Sloan used was he was inserting himself into this situation. He's told to stop, he doesn't stop. Perhaps the advancement and the insertion is the contact. Did the officer testify to the defendant continuing to advance? No. The officer testified as Justice Palmer pointed out. So where would we get that continuing to advance finding? The trial court's findings. Well, where is it in the evidence? So if we pin this down, the state's position is, as I now understand it, the state's position is that the defendant walked into the officer's hand. Is that what you're saying? And continued the advancement. Okay. But that's the contact. The chest walked into the hand. Where is that in the evidence? Not in the findings because this kind of delves back into what Justice McBride said earlier. This is what we're looking at. Where in the evidence is it that that happened? That goes back to the videotape.  I mean, we see Officer Allen put his hand on the defendant's chest. And you see, now at that point, the video itself is, I mean, we're talking about steps. We're talking about hand movement that we cannot see. But what we do know is, oh, I'm sorry, Justice. No, I'm just wondering. Is this really the position you took in your response brief? In our response, the answer to the petition for re-hearing? Well, either. Either or. Either or. We go with both. Either your original response brief. Our original, our stance. Or your response in the petition for re-hearing. Our original stance is that contact was made between the defendant and Officer Allen. And that that contact was insulting and provoking. Based on the situation that was. And is it based on this, what do we call that, stiff arm that the officer put out?  Well, I would submit that the battery statute itself is knowingly and intentionally makes contact by any means. By any means. That's the language. That's the language. All right. Are you bummed? Are you bummed by. Are you retreating from this hands of chest contact? Or is it. No, I'm not. I want to make the state say what the contact is. Okay. Is that the contact? I personally, the people contend that there are several instances of contact. What you cannot see that causes Officer Allen to turn as quickly as he does. Certainly words, as Justice Garcia pointed out, that could have triggered him. But as this court is aware and has seen this videotape, that officer turns unbelievably quickly. So it would seem common sense and the inferences from the record that he was touched. That caused him to immediately put his hand up and immediately stop an advancement. Or it could mean that the defendant said, you know, what's going on here. He says there was no expletive at all. But it could be that the officer was responding to someone that he knows is suddenly going to interfere with them. Himself and his partner trying to disarm a person who has a gun. It could be that there wasn't any contact at that point. It was simply the officer knowing I've got to get this guy out of here. So it could be that there wasn't any actual touching before that. Now, let me ask you this. Are you bound by your charges? Are you bound by what you pled? I mean, are we going to change this now? The original aggravated battery charge, the complaint for preliminary examination in the record says, and this is what is consistent with Allen's testimony, that the defendant committed aggravated battery in that he knowingly and intentionally caused bodily harm. In that he grabbed and pulled victim off of another offender being placed into custody. That's the original complaint for preliminary examination. Now, are you bound by that? Well, certainly the trial court directed out the aggravated battery charge. All right, but then we get the actual information. Now, that information says that he committed aggravated battery of an insulting, made physical contact. This is what it says. Made physical contact of an insulting or provoking nature to Regan Allen. Grabbed Regan Allen about the body knowing that Allen was a police officer. So the actual battery charge that we're getting down to says that he, what is it again? Grabbed him. Are you bound by what you went with at the trial? I think what we're bound by is the statute and the findings in the trial court. Justice Sloan looked at the defendant's testimony, looked at Officer Allen's testimony, and looked at the videotape and found that beyond reasonable doubt there was contact and that it was of an insulting and provoking nature. Let me go back, Ms. Bond, for a moment. You described the words of the battery statute, misdemeanor battery. What were the words you said? By any means. By any means. All right, so we are looking at that, by any means. And what your interpretation is is that here we have this by any means being the officer putting his arm out saying, you know, CPD business, the defendant advancing. And that's what you would argue is the battery. I would argue that that is the battery, and that is also supported by what's seen on the videotape. But the people are not in the entity. There aren't any cases, though, that would help us along those lines. Would you agree? I don't remember reading something in your brief. Not specifically on the chest. I do believe that People v. Nance does speak to an officer. Going back to Justice Palmer's question, which is, what's the evidence of that, other than the videotape? Because if the officer doesn't testify that the individual continued to advance after I extended my arm out, where do we get a battery? I would submit to you that this is a credibility determination made by Justice Sloan. I mean, he heard the testimony. Credibility is involved. In order to judge credibility, you have to have some evidence, and then you judge its weight. You assign a certain amount of credibility. I think what Justice Garcia may be asking, I hope I'm getting this right, it seems to me you're saying, well, you know, you can't see his hands and you can't see his chest, and we're taking the position that he walked into the officer's hand. You can't see that. The officer doesn't say that. So where's the evidence of that? I appreciate what you're saying. Is it just circumstantial? At this point, it is circumstantial. I mean, what we do have here is we have a situation that the officer's attention was not focused on this defendant. This officer's attention was focused on trying to disarm, struggling to disarm somebody in front of him when he has to suddenly deal with somebody coming from behind, whose intentions he doesn't know, he can't see. With regard to his memory, I mean, they did get hit by a car after the fact. So I don't know, and I would never presume to know what the officer was testifying to, but he testified that he was touched, that he was turned, that he was grabbed. Now, whether or not Justice Stallone chose not to believe necessarily that he was grabbed in the shoulder, he still believed that there was enough there, that there was contact. He did find contact was made and found that contact was installed. In order to uphold that finding, don't we have to find some evidence in the record of it? I believe you have the evidence. What is the evidence? If you look at what Officer Allen is saying, I don't believe that Officer Allen's testimony should be completely disregarded based on what he said, as far as the grabbing of the upper rear shoulder. I think what needs to be taken into account, what the trial court did and what this court would do, is look at the videotape, too, just to see the circumstances that are being- Is the videotape that is in the record, is that the actual People's Exhibit 1 that was admitted into evidence and impounded by the court, or is it some other videotape copy of a DVD? Your Honor, I really don't know the answer to that question. I would be happy to- We'll ask counsel, because I believe it was made part of the record by the defendant. I believe that People's Exhibit 1 was the videotape that was entered into evidence. I just wondered if the actual copy that we have, which- I think it is. It's quite difficult to actually view from a computer. But I'm just wondering if that was the actual DVD. That the trial court saw? Yes. I don't know. I would assume that when, at the close of the state's case, the state's attorney did impound the exhibit that was used. But I can find out for you if you would like. No, we'll ask counsel. I think that Ms. Hartman should know the answer to that. For the reasons that we've elicited here today in our briefs, we ask that you again affirm the defendant's conviction. Thank you. I just have a few points, but I will address your concern about the video. As far as I know, that is the video that was introduced at trial. The minute I was handed the record, that was the exact copy that was in there, and it stayed there the whole time. All right. Just two points. First, if, as the state contends, the contact here was made by my client by walking into the officer's arm, that contact would not be insulting or provoking contact, especially in the space of a few seconds. The officer flings his arm out. My client walks into it. Maybe he can't stop himself from going any forward when he sees the arm because of how fast this happened. That's not insulting or provoking contact, especially when you take into account the fact that he didn't know he was a police officer. The second point is, with regard to the battery statute, I believe the language, contact by any means, applies to the bodily harm prong of the battery statute that comes first. A person is guilty of battery if intentionally or knowingly by any means he causes bodily harm to an individual or makes physical contact of an insulting or provoking person. Well, that's another question that we didn't really discuss with you initially, and that is that when I've read these findings back, it's not clear to me whether what Justice Salone was actually saying was that the contact occurred because this guy interfered and they both get hit by a car. The record does suggest that he makes two different findings, that one is that the guy was advancing, and I'm not sure what we can get out of the record in terms of does advance mean, did the judge mean advanced? His body was on or near or there was contact between the defendant's body and the officers at the very beginning of the tape. You wouldn't ever be able to say how many people are even there. There's no way that anyone can look at that and say, oh, there's three people against the wall and they're all males, they're whatever, they're females, they're white, African American, Hispanic, you can't possibly discern any of that. This tape does show, though, some things that you can sort of discern, but you can't really tell at the beginning how many people are on this wall and you can see someone coming around, which appears to be the defendant, and then there is a point, if you freeze it, where the defendant's back is to the viewer and these, whatever these other, these figures are that are against the wall, there, you can't really see them, but you can see there's like, so if you freeze it, you can see that the defendant is very close to these people at the wall. But are they people? Yes. What else are they? How many? You really can't tell. So in this misdemeanor finding, going back to what I was saying, the judge seems to make two different findings. He says there's like this advancing and the officer had a right to put his arm out, is that contact? But then he also seems to suggest that the battering is when they, the two of them are hit by the car because of the defendant's interference. Well, first, as a threshold matter, the conviction was entered under the insulting or provoking prong. But even if it was entered under the bodily harm prong, that conviction could not stand. I do believe that because the statute says it causes bodily harm without the requirement of making physical contact, somebody could theoretically lure someone out into the oncoming traffic and be guilty of battery. But this happened on the sidewalk. So there's no way that anybody walking up on the sidewalk would know that a car was going to come from behind and strike them. So there's no criminal purpose or knowledge on the part of my client as far as the police car. And I understand that any injury that Alan suffered was as a result of that police car. And I think that, you know, even if the conviction was entered under the bodily harm prong, this court would still need to reverse. And the state does concede in its brief that Justice Salone wouldn't have found him guilty. Does the court say in his findings what section of the battery statute he was referencing? No. It's just on the midmiss. So without any other, I think that we can presume that the court entered the proper conviction. You were mentioning the state's brief. What was that comment? Oh, just that in the state's brief, it concedes that Justice Salone wouldn't have found him guilty if the contact was between the police car. That's why the argument focused on advancing. And he also said at the end of his ruling on the directed finding that he was leaving the case in place under the insulting and provoking nature prong. Right. And again, that was before my client testified. No, I'm just saying that in terms of whether it was the bodily harm section. He's limiting it to that. It was at least that's all that was really left. Right. Thank you, Your Honors. Well, let me ask you this one more question. And that is just to pick up on the last argument. I'm sure you're going to say no, but I want to know why. Can we circumstantially find or can we say that it was proper for the Trout Court to find circumstantially that in the course of this advance on the police officer that your client made the first contact? Especially in light of there was a question. I just was looking through it. There was a question on cross-examination where the officer was specifically asked, didn't you make the first strike? And he said no. Well, again, the officer's testimony was discredited by the findings in the video. But I don't think that given the findings of fact that this court can find that the first contact was made by my client because he said that the arm went out to stop his advance. And in addition, even if it was the chest pushing into the arm, that's not insulting or provoking. I was going to suggest that maybe it's not circumstantial evidence. Maybe it's because circumstantial evidence to me is proof of one thing that leads to another. It might be an inference that the defendant continued walking into the officer's hand. But once again, you make inferences from established facts. And the established fact for that, I think, would be the officer's testimony that that's exactly what happened, or that he extended his hand out and the defendant kept walking. But if there isn't any... Nothing in the record to suggest that's what happened. Okay. Thank you, Your Honors. For the reasons in the opening briefs, petition for rehearing, and stated today, we respectfully request that this court reverse Sondra's conviction for battery. All right. The case was well argued and well briefed, and it will be taken under counsel's advisement. Thank you.   Thank you.